# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| DANIEL EVERETT MILLSAP, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 2:17-CV-00082 |
| NANCY A. BERRYHILL, acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Daniel Everett Millsap, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income (SSI). The Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on November 27, 2015, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. On December 23, 2016, the Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## BACKGROUND

The Plaintiff was born on October 7, 1976. (R. at 32, ECF No. 11.) The Plaintiff previously worked as a dishwasher and a laborer. (R. at 208.) In this case, the Plaintiff claimed to have become disabled on August 10, 2013, when he was struck by a car as a pedestrian. (R. at 22–28.) He claims to be disabled due to degenerative disc disease, history of fractured left tibia

and fibula, degenerative joint disease, and arthritis of the right knee. (R. at 24.)

## THE ALJ'S HOLDING

Disability is defined as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 416.920(a)(4). The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). 20 C.F.R. § 416.920(a)(4)(i). In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the alleged onset date of disability, and thus, the Plaintiff satisfied the step one inquiry. (R. at 24.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments of history of fractured left tibia and fibula, degenerative joint disease, and arthritis of the right knee were severe impairments because they significantly limited his ability to perform basic work activities. (R. at 25–26.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ."

§ 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, he earns a presumption of disability "without considering [his] education, and work experience." § 416.920(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 416.920(a)(4)(v), (e), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 416.920(g).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c), as the claimant is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday. (R. at 27.)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 28.)

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform his past work and, if necessary, whether the claimant could perform other work in the economy. 20 C.F.R. § 416.920. At this initial step of the evaluation, the ALJ determined that transferability of job skills was not an issue because the claimant did not have past relevant work, but in light of his age, education, work experience, and RFC, that he could perform other

3

jobs that existed in significant numbers in the national economy. (R. 33.) Specifically, the Vocational Expert (VE) testified at the hearing via teleconference that he could be an order picker, car detailer, and packager. (*Id.*)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required

to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff claims the ALJ committed a number of errors, including that he should have considered whether the Plaintiff meets or equals the criteria of Listing 1.06, and the ALJ's RFC determination was improper because he failed to consider evidence that the Plaintiff is unable to sit and stand for prolonged periods and failed to evaluate the Plaintiff's need for a cane.

### A. The Plaintiff's Residual Functional Capacity (RFC)

An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including evidence of impairments that are not severe. 20 C.F.R. § 404.1545(a); *Craft*, 539 F.3d at 676. This Court will uphold an ALJ's decision if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. *Eichstadt v. Astrue*, 534 F.3d 663, 665–66 (7th Cir. 2008).

5

1.  *Need to Alternate Between Sitting and Standing*

In this case, the Plaintiff contends substantial evidence does not support the ALJ's RFC finding, and that the ALJ should have included a sit/stand option in his RFC. The ALJ found the Plaintiff had the RFC to perform the full range of medium work in that the Plaintiff has the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday. (R. 27.) For medium work, "[u]se of the arms and hands is necessary to grasp, hold, and turn objects" and "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping," and "[f]lexibility of the knees and torso is important for this activity" as well. SSR 83–10.

The Court agrees with the Plaintiff that the ALJ's determination of the RFC lacks adequate support in the record. The ALJ found that the Plaintiff had no limitations regarding the amount of time that he was able to sit during the workday and gave "great weight" to the state agency medical consultants, Dr. Brill (assessment dated October 23, 2013), and Dr. Sands (assessment dated January 29, 2014), who found the Plaintiff was able to sit, stand and/or walk for six hours in an eight hour workday. (R. at 31.) However, the Plaintiff testified he could only sit for 15-25 minutes before he has to get up, and that he could stand for only 10-15 minutes if he was not using a cane. (R. at 87–88.) The ALJ acknowledged this testimony in his decision (R. at 28), but never explained how or why he discounted it to arrive at an RFC of medium work. The Plaintiff's sister also provided a function report by a third party, stating the Plaintiff "can't walk or stand long at all." (R. at 231.) Additionally, there is medical evidence in the record that corroborates the Plaintiff's limitations in walking and standing. For example, there are physical therapist evaluations dated August 18, 2014, November 13, 2014, and November 3, 2015, noting

that the Plaintiff had difficulty walking, decreased joint mobility, and his knee limited him in standing and walking ability (R. at 507, 520, 595), and notes from physical therapy on January 2, 2015, that the Plaintiff was having difficulty with the standing exercises (R. at 525).

In the ALJ's decision, he does not discuss this evidence regarding the Plaintiff's inability to sit and stand for prolonged periods of time. This is improper, as "[t]he adjudicator must consider all allegations of physical and mental limitations or restrictions . . . ." SSR 96–8p, 1996 WL 374184, at *5. Here, the ALJ's failure to fully address the evidence related to the Plaintiff's alleged inability to sit and stand for prolonged periods of time during the workday is error. *See Liggins v. Colvin*, 593 Fed. Appx. 564, 568 (7th Cir. 2015) (remanding, in part, because the ALJ failed to provide a reasoned basis for excluding sitting limitation from claimant's RFC); *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011) (ALJ's error was compounded by failure to address claimant's "testimony about limitations arising from radiating pain in her hip, about her inability to sit and stand for extended periods of time, and about the frequency with which she needed to alternate positions"); *Cf. Arnett v. Astrue*, 676 F.3d 586, 593–94 (7th Cir. 2012) (remanding to agency for further proceedings to determine in the RFC the particular frequency of standing or sitting, or whether the claimant could be able to choose to sit or stand when she feels it is necessary).

Remand is appropriate in this case for the ALJ to address the evidence regarding the Plaintiff's ability to sit and stand, to formulate an RFC that is sufficiently specific as to how often he must be able to sit and stand, and to determine whether the RFC should include the need to alternate between sitting and standing.

## 2. Need To Use a Case

The ALJ also improperly failed to evaluate how much the Plaintiff uses a cane, and whether the Plaintiff's use of a cane affects his RFC. The Plaintiff presented substantial evidence that he needs to use a cane to stand and walk, including his own testimony and notes from physical therapy. (R. at 69–71, 78–85, 559, 589, 584–85.) However, the ALJ discounted this, stating "the record fails to indicate that the claimant has actually been prescribed the use of a cane by his treating physician." (R. at 31.)[1] The Seventh Circuit has repeatedly held that "the fact that an individual uses a cane not prescribed by a doctor is not probative of her need for the cane in the first place." *Eakin*, 432 Fed. Appx. at 613 (citing *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009)); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription . . . .").

The ALJ also stated that, "[w]hile the claimant alleged that he uses a cane and knee brace for assistance, the record indicates that he often forgets to bring these items to examination. (Exhibit 16F/8)." (R. at 31.) At the physical therapy session cited by the ALJ where the Plaintiff forgot his cane, the records indicate that the therapist provided the Plaintiff with a cane to assess his gait, which the physical therapist found to have gait deviations of arthrogenic (stiff hip or knee) gait, antalgic gait, decreased stance time, decreased step length, and increased base of support. (R. at 585.) Moreover, there are other physical therapy notes in the record indicating that the Plaintiff did bring his cane to other sessions. (R. at 580, 589.)

---

[1] There is some contrary evidence in the record. During the hearing, the Plaintiff testified that he did have a cane prescribed by his doctor, but that he is currently using a cane he borrowed from his neighbor. (R. at 69–70, 84.)

The ALJ also noted that the Plaintiff was not compliant with his physical therapy treatment and missed appointments. (R. at 31.) However, the Seventh Circuit has held that an ALJ should not "draw any inferences" about a claimant's condition from the failure or infrequency of treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care. *Craft*, 539 F.3d at 678-79; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2014). In this case, the ALJ did not ask the Plaintiff any questions about his alleged noncompliance with treatment; therefore, the ALJ should not draw any negative inferences.

Because it is possible that the Plaintiff's use of a cane would interfere with his ability to lift and carry 25-30 pound objects and engage in the bending-stooping that goes along with medium work, this claim is also remanded for the ALJ to determine whether the Plaintiff needs to use a cane when standing and walking, and if so, to assess its affect on the Plaintiff's RFC. *See Thomas v. Colvin*, 534 Fed. Appx. 546, 549–51 (7th Cir. 2013) (finding the ALJ's failure to address claimant's need for a cane required remand).

**3.** *Medium Work*

Finally, the Plaintiff argues that the ALJ's RFC finding for medium work is not supported by substantial evidence because the ALJ improperly gave significant support to the state agency physicians and misinterpreted medical evidence, including the x-ray dated August 11, 2014, that the Plaintiff claims revealed that his tibia fracture had not yet healed. (R. at 532.) Because this case is already being remanded, this Court need not directly rule upon this argument. However, during the RFC determination on remand, the ALJ is cautioned to support any finding of medium work with substantial evidence, and to consider the Plaintiff's request of

the assistance of a medical expert (R. at 101) or seek additional evaluations, should the ALJ deem it necessary. *See, e.g., Chase v. Astrue*, 458 Fed. Appx. 553, 556–57 (7th Cir. 2012) (finding the ALJ should have sought additional evaluations of the claimant's condition).

**B.     Listing 1.06**

One of the Plaintiff's main arguments is that the ALJ erred at step three of his analysis by analyzing and referring to Listing 1.02, 1.04, and 14.09, but failing to mention and consider 1.06. The Plaintiff contends that he meets Listing 1.06 which is entitled "[f]racture of the femur, tibia, pelvis, or more of the tarsal bones." 20 C.F.R. Pt. 404, Subpt. P., App. 1, §1.06. In order to meet the listing, the claimant must have both: "A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." (*Id.*) An "[i]nability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* at § 1.00(B)(2)(b)(1). Examples of an inability to ambulate effectively include the inability to walk without the use of a walker, two crutches or two canes, to use standard public transportation, or to carry out routine daily activities, such as shopping. *Id.* at § 1.00(B)(2)(b)(2).

The Plaintiff has presented some evidence demonstrating that he meets part A (an x-ray dated August 11, 2014, indicating "redemonstrated fractures of the proximal and mid fibula and mid tibia" (R. at 532)), but his ability to meet part B is not as clear. The Plaintiff bears the burden of proving that he is unable to ambulate effectively, as required by the Listing. *See Greuel v. Astrue*, No. 07-C-661, 2008 WL 4286537, at *5 (E.D. Wis. Sept. 16, 2008). No doctors in the

10

record have indicated that the Plaintiff had "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b)(1). While the Plaintiff testified that he used a cane, he never testified that he used two. (R. at 69–71, 84-85, 559, 580, 584–85.) The ALJ did discuss the Plaintiff's testimony and allegations that he was able to walk two blocks at a time with a cane (R. at 28), and used a walker at home when he became tired (R. at 29), and he also noted that examinations indicated that the Plaintiff was able to walk unassisted with an antalgic gait (R. at 29–31), and that he could prepare simple meals, bathe, and feed himself. (R. at 25.) Moreover, the two state agency physicians did consider Listing 1.06 and found that the Plaintiff did not meet that Listing. (R. at 109–11, 118–20.)

The Seventh Circuit has held that an ALJ has a duty to "discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). In this case, the ALJ should have at least mentioned Listing 1.06, and his failure to do so is error. However, an ALJ's failure to explicitly mention a relevant listing does not require reversal unless the failure to mention the listing is combined with a perfunctory analysis. (*Id.*) This is a close call whether the ALJ's analysis was sufficient on this issue. Because this case is being remanded on another ground, this Court need not directly decide this issue.

The ALJ is cautioned on remand that he should consider specifically evaluating Listing 1.06 and analyzing whether the Plaintiff meets that Listing.

**C.     Step 5**

The Plaintiff also argues that the ALJ failed to present a hypothetical question to the Vocational Expert (VE) that accurately described all of the Plaintiff's physical limitations. This issue need not be directly decided upon by this Court since this matter requires remand on the RFC determination. Any change in the RFC will necessarily impact the hypothetical posed to the VE.

## CONCLUSION

For the reasons stated above the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on September 5, 2018.

                                       s/ Theresa L. Springmann
                                       CHIEF JUDGE THERESA L. SPRINGMANN
                                       UNITED STATES DISTRICT COURT